**[J-59B-2013]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

IN RE:  PHILADELPHIA TRAFFIC COURT     :    No. 62 EM 2013
JUDGE CHRISTINE SOLOMON               :

                                             :    Petition of the Judicial Conduct Board to
                                             :    Stop, Suspend or Stay Proceedings on
                                             :    the Rule to Show Cause or, in the
                                             :    Alternative, for Permission to Appear,
                                             :    Participate and Be Heard at any
                                             :    Proceedings before the Appointed
                                             :    Master
                                             :
                                             :
                                             :    ARGUED:  September 10, 2013

## CONCURRING STATEMENT

**MR. JUSTICE SAYLOR**                              **FILED:  December 19, 2014**

I join the per curiam order deferring to the Judicial Conduct Board.

I agree with Mr. Chief Justice Castille that the issue of whether a member of the minor judiciary has willfully defied an administrative directive issued by this Court is not one to be treated lightly.  To my mind, however, it does not follow that the present allegations of misconduct give rise to "extraordinary circumstances" justifying the exercise of our King's Bench powers.  In re Bruno, ___ Pa. ___, ___, 101 A.3d 635, 683 (2014); see also id. ("We have confidence that the standardized procedure of Article V, Section 18 [of the Pennsylvania Constitution] will, in the vast majority of circumstances, adequately respond to . . . the necessities of protecting the integrity of the Unified Judicial System, against judicial impropriety and the appearance of judicial impropriety." (emphasis omitted)).  In my opinion, the prospect that a traffic court jurist failed to cooperate in an administrative review of traffic court operations falls into the "vast

majority of circumstances." Thus, I believe that deferring to the Judicial Conduct Board for the investigation and resolution of the allegations of misconduct against Judge Solomon is the appropriate course in the present context.

All else being equal, I might be sympathetic to the position that the confidentiality inherent in the Board's proceedings and the private warning it issued to Judge Solomon leave room for additional action on the part of this Court. I do not consider all else to be equal, however, as I am particularly concerned by the manner in which the underlying investigation supervised by this Court has unfolded. I would proffer that such investigation does not itself give rise to confidence in the integrity of the proceedings.

To be specific, I am troubled by the way in which promises of confidentiality have been handled. When an administrative judge wrote to Judge Solomon requesting an interview, he stated without qualification that the interview would remain confidential and that Chadwick Associates would be providing a "confidential report" to the Chief Justice. Letter dated March 9, 2012, introduced as AOPC Hearing Exhibit C. See N.T., June 21, 2013, at 156 (reflecting that the exhibit was admitted into evidence). Yet, the ensuing report by Chadwick, which was made public, quoted some of Judge Solomon's remarks and more generally summarized the substance of the interviews, thus rendering the promised confidentiality illusory. The Administrative Office of Pennsylvania Courts ("AOPC") now suggests that use of the term "confidential" was nothing more than a device to dissuade interviewees from attempting to have counsel present, and that its sole purpose was to protect the federal prosecution from taint, and not to protect the confidentiality of the interviewed judges.[1]

---

[1] See AOPC's "Motion to Vacate the Court's July 12, 2013 Stay, or in the Alternative, to Lift the Stay for the Limited Purpose of Allowing the Filing of AOPC's Proposed Responsive Findings of Fact, Conclusions of Law, Argument, and Other Supplemental Information," dated August 23, 2013 ("Motion to Vacate"), Exhibit A, at 31; see also id. (…continued)

This is consistent with the representation of the administrative judge, Judge Glazer, who, in an August 21, 2013, affidavit – attached as Exhibit C to the AOPC's Motion to Vacate – represented that the limited purpose of promising confidentiality in his letters to the Traffic Court judges was to clarify that the recipient of the letter could not bring counsel to the interview, and that the term "confidential" was not intended to convey that the information would actually be kept secret. Attachment 3 to that affidavit includes a February 29, 2012, email from William Chadwick to Judge Glazer suggesting that the Court Administrator of Pennsylvania "agrees that the judges may not have their attorneys at the interviews and advised that we address the issue subtly by terming the interviews 'confidential' in the letter[s]" (emphasis added).

The unusual nature of the inquiry into Judge Solomon's conduct also put the AOPC into a difficult position. While initially explaining to the Special Master that the AOPC was assuming a neutral role, see N.T., June 21, 2013, at 8 ("[T]he Supreme Court order directed the AOPC to participate. We certainly agree that we will not take a prosecutorial stance."), the AOPC's counsel proceeded to present witnesses who testified that Judge Solomon refused to cooperate and lied during the administrative review – including William Chadwick, see, e.g., id. at 36-37 ("Q: What did your operational review conclude as to Judge Solomon, Mr. Chadwick. . . . A: Well, I

_____

(continued…)
at 19 ("[T]he confidentiality referenced in the letter was intended by Judge Glazer solely to indicate that interviewees would not be permitted to bring counsel into the interview."); cf. id. at 8-9, 29 (suggesting that the term "confidential" was only meant to convey that information would not be directly transmitted to federal authorities, notwithstanding that such authorities would be able to obtain it if it was published); id. at 11 (explaining that Judge Solomon was not informed of her right to counsel on the basis that the information would not be directly shared with the FBI). See generally id. at 20 (positing that it was unreasonable for Judge Solomon to believe that "confidential" meant "secret").

concluded that she had lied to us. I concluded that she had not cooperated."), and one of his associates, see id. at 107 ("Q: Do you remember [Judge Solomon] saying, I will not cooperate? A: Yes.") – and to cross-examine Judge Solomon during her testimony. See id. at 191-205. Later, the AOPC submitted papers to this Court complaining that it would be "prejudiced" if it could not respond to Judge Solomon's proposed findings of fact and conclusions of law with its own proposed findings and conclusions, together with "[r]esponsive [a]rgument" responding to the advocacy submitted by Judge Solomon on her own behalf. See Motion to Vacate at 6-7. In its proposed conclusions of law, the AOPC offered that, at the June 21, 2013, hearing, the witnesses called by the AOPC testified credibly, but Judge Solomon's testimony was "not credible." See id., Exhibit A, at 15-18.

To my mind, the manner in which the inquiries into Judge Solomon's conduct proceeded have been, at the very least, irregular. For this reason, as well as the absence of any ongoing exigency, I believe that, at this late juncture, the Court has reached an appropriate determination: that no further investigation of Judge Solomon is needed to protect the integrity of the judicial system in view of the disposition reached by the Judicial Conduct Board – a tribunal that is both constitutionally authorized to conduct such an investigation and, just as importantly, is less closely connected than this Court with the circumstances noted above.